IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HORTENCIA ACAHUA ZEPAHUA
and MARIA DE LA PAZ SOLEDAD
ACAHUA ZEPAHUA,

       Plaintiffs,

v.                                     No. CIV 13-00523 RB/LAM

COUNTY OF DOÑA ANA, NEW
MEXICO,

       Defendant.

## MEMORANDUM OPINION AND ORDER

On October 10, 2012, Doña Ana County Sherriff's deputies arrested Hortencia Acahua Zepahua and Maria de la paz Soledad Acahua Zepahua on misdemeanor charges. They were arraigned the next day and held at the Doña Ana Detention Center. Because of a 48 hour immigration hold, their attempt to post bond was rebuffed, and they were not released from custody until December 10th and 13th, 2012 respectively.

On July 19, 2013, Plaintiffs filed an Amended Complaint against the County of Doña Ana, alleging that their continued imprisonment violated their Fourth and Fourteenth Amendment rights as well as New Mexico law. (Doc. 29). Before the Court is Doña Ana County's Second Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 36).

Jurisdiction arises under 28 U.S.C. § 1331. For the state law claims, jurisdiction arises under 28 U.S.C. § 1367. Having considered the submissions and arguments of the parties, the relevant law, and being otherwise fully advised, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion. (Doc. 36).

**Background**

At issue in this case is Doña Ana County's practice of holding foreign-born persons in the Doña Ana County Detention Center without the benefit of posting bond well beyond the 48 hour period federal immigration authorities request. (Doc. 29 at ¶ 4). Plaintiffs allege that this practice is unlawful, and seek class certification, declaratory relief, injunctive relief, damages and attorneys' fees.

Hortencia Acahua Zepahua and Maria de la Paz Soledad Acahua Zepahua ("Plaintiffs") are sisters. (*Id.* at ¶ 7).[1] Both born in Mexico, they have lived in the United States for twelve years. (*Id.*) Prior to the incident in question, neither sister had been arrested. (*Id.*) Both sisters are eligible for immigration relief from the U.S. government, and have submitted applications for legal status. (*Id.* at ¶ 10).

The sisters reside in Doña Ana County ("County"), a political subdivision within the State of New Mexico. (*Id.* at ¶ 7). On October 10, 2012 Doña Ana County Sheriff's deputies came to their home to investigate a noise complaint and arrested the sisters on misdemeanor charges. (*Id.* at ¶ 12). The deputies took the sisters to the Doña Ana County Detention Center, which is operated by Doña Ana County. (*Id.*)

The next day, the sisters appeared before Las Cruces Magistrate Court Judge Oscar Frietze for arraignment. (*Id.* at ¶ 13). The judge granted them a bond and ordered their release upon posting of that bond. (*Id.*) Later that day, the sisters' mother came to the Detention Center to secure their release. (*Id.* at ¶ 14). However, the mother's effort to post bond was unsuccessful. Maricela Montez, the employee designated to accept bond payments, informed the mother that

---

[1] The following narrative is based on Plaintiffs' allegations, which, at this stage of the litigation, have not been substantiated. However, for purposes of analyzing the Defendant's Motion to Dismiss, this Court must accept all of the Plaintiff's well-pleaded allegations as true. *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

the sisters could not be released from the Detention Center because immigration holds had been lodged against them. (*Id.* at ¶ 15). Believing that there was nothing she could do to free her daughters, the mother left the Detention Center. (*Id.*)

Immigration and Customs Enforcement (ICE) – an agency of the Department of Homeland Security (DHS) – uses immigration holds to enforce U.S. immigration laws. Pursuant to 8 U.S.C. § 1103(a), DHS has the authority to issue a 48-hour immigration hold on a person in custody, who it suspects is not a citizen, to allow the agency time to investigate whether it should initiate deportation proceedings against the person. (*Id.* at ¶ 18-19). To lodge a 48-hour hold, DHS uses the standard Form I-274 "Immigration Detainer – Notice of Action." (*Id.* at ¶ 18). Through issuing the form, ICE requests that the local law enforcement agency (LEA) "detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays, and Federal holidays)" after the person otherwise would be released from criminal custody "to provide adequate time for ICE to assume custody of the alien."[2] (*Id.* at ¶ 20).

According to the Amended Complaint, the Detention Center's custody should not have exceeded 48 hours after the moment the sisters' mother attempted to post bond, which in this case was October 13, 2012. (*Id.* at ¶ 25-26). Instead, Plaintiffs allege that without process or procedure to challenge their custody, the Detention Center held them until mid-December 2012, when the Detention Center turned them over to ICE. (*Id.* at ¶ 28). Plaintiffs were released from ICE's custody within a few days of their transfer, because they were eligible for immigration relief to stay in the U.S., did not present a danger to the community or flight risk, and were well-established members of the community. (*Id.*)

---

[2] In fact, as the Plaintiffs note, the detainer form reminds the custodian four times that the hold period must not exceed 48 hours. (*See* Doc. 29 at 25-28).

Plaintiffs allege their treatment reflects the typical experience of foreign-born detainees in the Detention Center. Specifically, they allege: that it is the policy, practice, and custom adopted by the Detention Center to hold foreign-born persons awaiting pick-up by federal immigration authorities; to tell friends and family seeking to post bail on such persons' behalf that they will not be released from custody because of immigration holds, even if bond is posted on their behalf; and to hold such persons well beyond the 48 hours the immigration hold allows, if federal immigration authorities have not come to pick such persons up within that time. (*Id.* at ¶ 33). As evidence of this practice, Plaintiffs allege that Detention Center records indicate that between April 18, 2012 and April 18, 2013, 463 people were held in the Detention Center with immigration holds. According to the Amended Complaint, of those 463 people, only three posted bond and the average length of custody was 78 days. (*Id.* at ¶ 16).

Based on the above acts, Plaintiffs' First Amended Complaint contains four causes of action. Counts I – III assert claims under 42 U.S.C. § 1983, arising pursuant to the Fourth Amendment's prohibition against unreasonable searches and seizures, the Fourteenth Amendment's substantive due process protections, and the Fourteenth Amendment's procedural due process protections. Count IV asserts personal injury claims for false imprisonment in violation of New Mexico law. Defendant now moves to dismiss Plaintiffs' First Amended Complaint in its entirety.

## **Legal Standard**

### I.      **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim for relief that plausibly, not merely

possibly, entitles the plaintiff to relief under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). In considering a motion to dismiss, the court must look within the four corners of the complaint and accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not accept legal conclusions contained in the complaint as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## Discussion

Defendant argues dismissal of the federal claims is appropriate because: (1) Defendant cannot be held vicariously liable pursuant to 42 U.S.C. § 1983; (2) Plaintiffs have failed to state a claim for Defendant's direct liability pursuant to 42 U.S.C. § 1983; and (3) Plaintiffs' Fourth Amendment claims are improper because they were pre-trial detainees. Further, Defendants argue that if these federal claims are dismissed, this Court should decline supplemental jurisdiction over all state law claims. Alternatively, Defendant argues that Plaintiffs' failed to invoke the jurisdiction of this Court to hear a New Mexico state law tort claim action. [3]

## I.   Defendant's Liability Under § 1983

The Supreme Court established that municipalities may be held liable as "persons" for constitutional violations under 42 U.S.C. § 1983. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a municipality may only be held liable under § 1983 "for *its own*

---

[3]Defendant also argues that Plaintiffs' class claims do not meet the requirements of Rule 23. While it is true that a district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class, *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982), a Rule 12(b)(6) motion to dismiss is not the proper forum for such an analysis. Generally, courts require a motion for class certification that describes in detail why the action may be maintained as a class action under Rule 23. After the motion for certification is filed, a defendant then has an opportunity to respond with arguments illustrating why certification is inappropriate. The process of filing, and responding to, a separate motion for class certification affords both parties an opportunity to provide focused arguments regarding the class certification issue and promotes justice by helping to ensure that a court hears completely from both sides before deciding whether to certify a class. This Court finds no reason to disrupt such a process here. Consequently, the Court declines to consider certification issues in detail until it considers Plaintiffs' Motion for Class Certification.

unconstitutional or illegal policies." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (emphasis added). Thus, "a municipality is liable only when the official policy [or unofficial custom] is the moving force behind the injury alleged." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). Accordingly, a plaintiff must "identify 'a government's policy or custom' that caused the injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (quoting *Monell*, 436 U.S. at 691-92). The plaintiff must then show "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* (citing *Brown,* 520 U.S. at 403).

The resulting standard requires a plaintiff asserting municipal liability to plead and prove "three elements: (1) official policy or custom, (2) causation, and (3) state of mind." *Schneider*, 717 F.3d at 769-770.

Defendant argues that Plaintiffs' Amended Complaint is deficient as to all three of these elements. The Court disagrees, and addresses each factor in turn.

**a.** *Official Policy or Custom*

Defendant argues, generally, that Plaintiffs' allegations are not specific enough to show the existence of an official policy or custom, which resulted in the violation of Plaintiffs' constitutional rights. (*See* Doc. 41 at 2). In particular, Defendant argues that Plaintiffs' claims are only against individuals, and the County cannot be liable on the basis of *respondeat superior* or vicarious liability. *See Milligan-Hitt v. Bd. Of Trustees of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1223 (10th Cir. 2008). While this is a true statement of law, it is not an accurate depiction of Plaintiffs' allegations. The First Amended Complaint clearly identifies the municipality as the source of Plaintiffs' injuries.

6

"The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Schneider,* 717 F.3d at 770 (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986)) (internal quotation marks omitted). An official policy or custom may take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Cacioppo v. Town of Vail, Colo.*, 528 F. App'x 929, 932 (10th Cir. 2013) (citing *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)) (citations omitted)).

According to the Amended Complaint, Defendant's "policies, practices, customs, lack of supervision, failure to train, acts, and omissions were the moving force behind" the constitutional violations. (Doc. 29 at 67). While these are all available paths in establishing municipal liability, Plaintiffs need only establish the plausibility of one path to survive a motion to dismiss. Here, the Amended Complaint provides sufficient allegations to support the existence of a County custom, which caused the constitutional violations to occur.

In *Monell*, the Court made clear that "local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690-91. The requirement is only that the alleged acts must be "sufficiently widespread and pervasive so as to

7

constitute a 'custom.'" *See Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249-50 (10th Cir. 1999) (citing *Starrett v. Wadley*, 876 F.2d 808, 820 (10th Cir. 1989)).

Here, the allegations indicate that the Plaintiffs' experience in the Detention Center was far from an isolated incident. According to the First Amended Complaint, of the 463 people held in the Detention Center with immigration holds, only three detainees were able to post bond.[4] And, of even more concern, the average length of stay for each of these foreign-born detainees was 78 days. Surely, the County holding foreign-born detainees an additional 30,000 plus days is not the result of one rogue employee, but is more likely a widespread or pervasive practice.

Therefore, Plaintiffs' allegations are more than sufficient to establish that Defendant's custom in regards to holding foreign-born detainees resulted in the prolonged detention and the denial of bond of foreign-born detainees.

   b.  *Causation*

"To establish the causation element, the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Schneider*, 717 F.3d at 770 (quoting Martin A. Schwartz, *Section 1983 Litigation Claims & Defenses,* § 7.12[B] (2013)). This requirement is satisfied if the plaintiff shows that "the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404.

In this case, the causation inquiry is relatively straightforward. Plaintiffs allege that Defendant's official policy or custom itself – of holding detainees without legal authority – violates federal law – specifically, Plaintiffs' Fourth and Fourteenth Amendment rights. In support of their claims, Plaintiffs allege that Defendant had a custom of systematically holding

---

[4] Defendant argues that the fact that three detainees posted bond contradicts Plaintiffs' argument regarding official policy or custom. However, Defendant provides no support to allow this Court to conclude that it is typical for less than 1% of pretrial detainees to post bond. Thus, in the Court's view, a 1% rate of posting bond only further proves the existence of a custom, which resulted in the denial of Plaintiffs' constitutional rights.

foreign born detainees for prolonged periods of time without legal justification, and that the Plaintiffs were personally injured by this action. These allegations alone are enough for this Court to determine the "municipal action was the moving force behind the injury of which the plaintiff complains." *Brown*, 520 U.S. at 404-405 ("Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward").

Defendant challenges this conclusion. Defendant claims that the pleadings failed to (1) identify any of Defendant's policies, training, supervision, or hiring practices that were responsible for its alleged constitutional violations or (2) demonstrate any connection, besides an employment relationship, between Defendant and Ms. Montez – the employee who advised Plaintiffs' mother about the payment of bond. Again, Defendant ignores Plaintiffs' allegation that the County had a widespread and pervasive practice of illegally holding foreign born detainees without legal justification. As discussed above, Plaintiffs are rightfully attempting to hold the Defendant liable for its own actions, not those of its employees.

Next, Defendant argues that its employee, Ms. Montez, never refused Plaintiffs' attempted bond payment. Rather, according to Defendant, Ms. Montez merely accurately explained that, because of the immigration hold, the Plaintiffs could not be released even if bond was posted. Consequently, Defendant contends that the Plaintiffs' failure to pay bond after the immigration hold had expired, not the Defendant's own action, was the cause of Plaintiffs continued detention.

This argument may represent a viable defense to the allegations. However, to survive a motion to dismiss, "it is not necessary for the complaint to contain factual allegations so detailed that all possible defenses would be obviated." *See Christensen v. Park City Mun. Corp.*, 554 F.3d

9

1271, 1276 (10th Cir. 2009). Rather, "[t]he factual allegations need only contain enough allegations of fact "to state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

    c.  *State of Mind*

Finally, to prove municipal liability, Plaintiffs must show that Defendant acted with the requisite state of mind. This requires the Plaintiff to demonstrate "that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown,* 520 U.S. at 407 (internal quotation marks omitted). In *Barney*, the Tenth Circuit expounded on the deliberate indifference standard, stating:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction[.]

*Barney*, 143 F.3d at 1307 (citations omitted); *see also Schneider*, 717 F.3d at 771.

Again, the Court's analysis on this issue is straightforward. Plaintiffs allege that Defendant engaged in a pattern of tortious conduct. The alleged facts indicate that 463 people were held in the Detention Center in the year between April 18, 2012 and April 18, 2013, and only three of these detainees posted bond. From these numbers, it is plausible that the Defendant's conduct was usual and recurring. This, by the very terms of *Barney*, is enough to satisfy this element of the municipal liability inquiry.

In sum, Plaintiffs pled a proper claim for municipal liability under § 1983. They have presented specific, plausible allegations indicating that the Defendant's custom was the moving force behind their injuries. *See Brown*, 520 U.S. at 404. Their allegations are sufficient to inform

the Defendant of the actual grounds of the claims against it. This is sufficient to survive a motion to dismiss. *See Christensen*, 554 F.3d at 1276.

## II.      Plaintiffs Are Entitled to Fourth Amendment Protection

Defendant next argues that Count I of Plaintiffs' Amended Complaint should be dismissed as a matter of law, because Plaintiffs do not properly plead a violation of their Fourth Amendment rights. Specifically, Defendant contends that as pretrial detainees, the Due Process Clause of the Fourteenth Amendment, not the Fourth Amendment, protects Plaintiffs against extended confinement after a judicial determination of probable cause.

Indeed, the Tenth Circuit has placed clear demarcations on the applicability of the Fourth and Fourteenth Amendment to pretrial detainees. The Fourth Amendment requires that the states "provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before *or promptly after* arrest." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (citing *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975)). Whereas, "[t]he right of an accused to freedom pending trial is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment." *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010). Accordingly, "the Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause." *Gaylor v. Does*, 105 F.3d 572, 575-76 (10th Cir. 1997).

Plaintiffs' allegations stem from Defendant's conduct after an initial determination of probable cause.[5] Specifically, they claim they were wrongfully denied their right to post bond to

---

[5] The First Amended Complaint makes no overt reference to a judicial determination of probable cause authorizing the Plaintiff's October 10, 2012 arrest. However, Plaintiffs seem to concede in both their pleadings and their briefs

secure their release. At no point in Plaintiffs' First Amended Complaint or briefs do they challenge the legality of their initial seizure. Thus, their allegations fall squarely within the purview of the Fourteenth Amendment, not the Fourth Amendment.

A plaintiff must plead the correct constitutional provision underlying the § 1983 claim to state a valid claim. *See Chavez v. Bd. of Cnty. Comm'rs of Sierra Cnty.*, 899 F. Supp. 2d 1163, 1185 (D.N.M. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 394-5 (1989)); *see also Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). Therefore, since Plaintiffs' allegations stem from the period after a determination of probable cause, Plaintiffs Fourth Amendment claim (Count I) is improper, and will be dismissed without prejudice.

## III.    Supplemental Jurisdiction is Appropriate

As the Plaintiffs have alleged plausible federal law claims, this Court has jurisdiction over Count IV of Plaintiffs' First Amended Complaint pursuant to 28 U.S.C. § 1367(a).

## IV.    The Court Has Jurisdiction Over New Mexico Tort Claims

Plaintiffs also bring a false imprisonment claim under New Mexico law. Defendant challenges the jurisdiction of this Court to hear this tort claim, arguing it is barred by the New Mexico Tort Claims Act ("NMTCA").

Under the NMTCA, every person who claims damages from the state or any local public body must present a written notice to the public entity involved stating the time, place and circumstances of the loss or injury. N.M. STAT. ANN § 41-4-16(A). No action may be maintained under the NMTCA "unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence." § 41-4-16(B); *see also Dutton v. McKinley Cnty. Bd. of Comm'rs*, 113 N.M. 51, 52, 822 P.2d 1134, 1135 (Ct. App. 1991).

---

that the requirements of *County of Riverside v. McLaughlin* were satisfied. *See* 500 U.S. 44 (1991). Thus, the Court assumes that there was a probable cause determination as to the initial seizure.

Specifically, the NMTCA notice provisions state, in pertinent part:

A.  [E]very person who claims damages from the state or any local public body under the Tort Claims Act . . . shall cause to be presented . . . to the administrative head of any . . . local public body for claims against such local public body . . . a written notice stating the time, place and circumstances of the loss or injury.

B.  No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence.

N.M. STAT. ANN. § 41-4-16(A),(B).

Plaintiffs apparently concede that they failed to present written notice of the claims to the Defendant as contemplated by § 41-4-16(A). Thus, the issue presented is whether the County had actual notice of the occurrence within the meaning of § 41-4-16(B). *See Lopez v. State*, 122 N.M. 611, 615, 930 P.2d 146, 150 (1996).

"Actual notice to the governmental entity involves actual notice that litigation is likely to ensue, not simply actual notice of the occurrence or accident." *Powell v. New Mexico State Highway & Transp. Dep't*, 117 N.M. 415, 418, 872 P.2d 388, 391 (Ct. App. 1994). The governmental entity that is to receive notice is "the particular agency that caused the alleged harm." *Powell*, 117 N.M. at 418, 872 P.2d at 391. In applying this standard, New Mexico courts look at "whether, from the totality of the circumstances known to the governmental entity charged with fault in the occurrence, a reasonable person would have concluded that the victim may claim compensation." *Lopez*, 122 N.M. at 615, 930 P.2d at 150

According to Plaintiffs, Defendant had actual notice of possible litigation, because: (1) Defendant knew that the immigration holds were only for 48 hours (Doc. 29 at ¶ 20); (2) Defendant interfered in Plaintiffs attempt to post bond (*Id.* at ¶ 15); and, (3) Defendant knew that holding Plaintiffs beyond the 48 hour hold period was a deprivation of their liberty and a due process violation.

In response, Defendant argues that these facts merely show that the Defendant had knowledge of the occurrence, which is insufficient to make the inference of actual notice under § 41-4-16(B). However, this is an incomplete statement of New Mexico law. In *Lopez v. State,* the Supreme Court of New Mexico held that, when "the governmental entity allegedly at fault has knowledge of the facts and circumstances of the occurrence, it may also have knowledge of its own potential liability. A reasonable inference of the likelihood of suit may arise from such knowledge." *Lopez v. State,* 122 N.M. at 616, 930 P.2d at 151.

Here, the First Amended Complaint alleges that the Government knowingly held the Plaintiffs in violation of their constitutional rights. Thus, cases like *Powell*, where the claims are grounded in negligence or non-deliberate government conduct, are inapposite. *See Powell*, 117 N.M. at 417, 872 P.2d at 390. When, as in this case, the government is alleged to have committed an intentional tort, it is reasonable to believe that the victims of that tort would make a claim for compensation.

**THEREFORE,**

IT IS ORDERED that Defendants' Motion to Dismiss (Doc. 36) is GRANTED IN PART AND DENIED IN PART in accordance with the opinion above.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

14